**Jon M. Egan**, OSB 002467
Jegan@eganlegalteam.com
Jon M. Egan, PC
547 Fifth Street
Lake Oswego, OR 97034-3009
Telephone:  (503) 697-3427
Fax: (866) 311-5629
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **LUCAS PERKINS**, <br><br>               Plaintiff, <br><br>    vs. <br><br> **DAVE SINGH**, an individual, and **DANWEI LLC**, an Oregon limited liability company, <br><br>               Defendants. | Case No. 3:19-cv-01157-AC <br><br> **Joint motion for final class and collective settlement approval** |

# Table of contents

I. Final approval of settlement ................................................................................. 1

  A. Notice to the Class ................................................................................................ 3

  B. Final Certification of Rule 23 class ...................................................................... 4

    1. Rule 23(a) ....................................................................................................... 5

      a) Numerosity ................................................................................................. 5

      b) Commonality .............................................................................................. 6

      c) Typicality .................................................................................................... 6

      d) Adequacy .................................................................................................... 7

      e) Ascertainability .......................................................................................... 8

    2. Rule 23(b)(3) .................................................................................................. 8

  C. Final FLSA Collective Certification ...................................................................... 9

  D. Settlement Agreement ......................................................................................... 10

    1. Strength of Plaintiff's case and the risk, expense, complexity, and likely duration of further litigation and maintaining class action status through trial .................. 10

    2. The amount offered in settlement ................................................................. 11

    3. The extent of discovery completed and the stage of the proceedings .................. 12

    4. The experience and views of counsel ............................................................. 12

    5. Presence of a Government Participant ........................................................... 13

    6. Reaction of the Settlement Class .................................................................. 13

    7. The absence of collusion or other conflicts of interest .................................... 14

      a) There is no disproportionate distribution to plaintiff's counsel ..................... 15

      b) The agreement does contain a clear sailing provision, but no kicker .............. 18

      c) There is no reversion, either of settlement funds or attorney fees ................... 19

    8. Application .................................................................................................... 20

      a) The notice process was fair and fairly implemented ...................................... 21

      b) The case was fought before it was settled ................................................... 22

      c) Participation of mediator and course of negotiations ..................................... 22

      d) The class achieved an excellent result ........................................................ 23

II. Conclusion ...................................................................................................... 23

## Table of authorities

**Cases**

Abdullah v. U.S. Sec. Assocs., Inc*., 731 F.3d 952, 956 (9th Cir. 2013) ................................. 4, 8

*Adams v. Inter–Con Sec. Sys.*, 242 F.R.D. 530, 535–36 (N.D.Cal.2007) ............................10

*Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 984 (E.D. Cal. 2012) ...................... 17

Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) ..........................................................3

Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 568 U.S. 455, 466 (2013).........................5, 8

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013)............... 11, 13, 16

Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 722 (9th Cir. 2010)............................... 9

*Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, *7 (N.D. Cal. Apr. 15, 2015).........................................................................................................................................19

*Bell v. Consumer Cellular, Inc.*, No. 3:15-CV-941-SI, 2017 WL 2672073, *12 (D Or June 21, 2017) ..................................................................................................................................... 16

Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 258 (N.D. Cal. 2015)..................14, 22

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) ............................................................ 15

*Briseño v. Henderson*, No. 19-56297, 2021 WL 2197968, *6 (9th Cir. June 1, 2021) ........... 15

*Burden v. SeleciQuote Ins. Servs.*, 2013 WL 3988771, *5 (ND Cal Aug 2, 2013) ................. 16

*Carter v. Anderson Merchandisers, LP*, 2010 WL 1946784, *7 (C.D. Cal. 2010) ............... 23

Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) ................................................................5

*Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 8526982, *9 (ND Cal Dec 11, 2015)........................................................................................................................................16

Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011) .........................................5

*Evans v. Jeff D.,* 475 U.S. 717, 734–35, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986) ... 16

*Franco v. Ruiz Food Prod., Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, *18 (ED Cal Nov 27, 2012) .......................................................................................................................... 16

*Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575 (ED Cal Oct 31, 2012)......................... 16

Giles v. St. Charles Health Sys., Inc., 294 F.R.D. 585, 590 (D. Or. 2013)............................5

*Good v. Am. Water Works Co., Inc.*, No. CV-2:14-01374, 2016 WL 5746347, *7 (S.D.W. Va. Sept. 30, 2016) ........................................................................................................................ 22

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998) .........................................2, 4, 7

Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) .........................................7

Hansberry v. Lee, 311 U.S. 32 (1940) ......................................................................................7

*Harris v. Vector Mktg. Corp.,* 2011 WL 4831157, *6 (N.D.Cal. Oct. 12, 2011) ...................... 15

*Harris v. Vector Mktg. Corp.*, No. C-08-5198-EMC, 2012 WL 381202, *5 (N.D. Cal. Feb. 6, 2012)........................................................................................................................................18

In re Bluetooth *Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)... 15, 17, 19, 20, 21, 23

*In re High-Tech Employee Antitrust Litigation*, 11-cv-02509-LHK, 2015 WL 5158730, *14 (N.D. Cal. Sep. 2, 2015)............................................................................................................19

*In re Hot Topic, Inc. Sec. Litig.*, 2014 WL 12462472, at *6 (C.D. Cal. Nov. 3, 2014)............ 9

In re Hyundai & Kia Fuel Econ. Litig., 926 F.3d 539, 556 (9th Cir. 2019)...........................3, 5

In re Mego Fin. Corp., 213 F.3d 454, 459 (9th Cir. 2000)................................................11, 12

In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ...................... 14

In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995)............................................12

In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ...........................12

In re Syncor ERISA Litig., 516 F.3d 1095, 1100 (9th Cir. 2008) .............................................1

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) ............................................................................. 19, 21

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) ........................................................................................................... 21

*Keegan v. Am. Honda Motor Co, Inc.*, No. CV-10-09508-MMM-AJWx, 2014 WL 12551213, *18 (C.D. Cal. Jan. 21, 2014) ...................................................................................... 18

Lane v. Facebook, Inc., 696 F.3d 811 (9th Cir. 2012) ..................................................... 1, 2, 3

*Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D.Cal.2004) ........................... 10

Lilly v. Jamba Juice Co., 308 F.R.D. 231, 237 (N.D. Cal. 2014) ........................................... 8

*Lusby v. GameStop Inc.*, 2015 WL 1501095, *4 (ND Cal Mar 31, 2015).............................. 16

Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012)............................. 4, 6

*Miller v. CEVA Logistics USA, Inc.*, No. 2:13-CV-01321-TLN, 2015 WL 4730176, *8 (ED Cal Aug 10, 2015).............................................................................................................. 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)....10, 12, 14

*Norris v. Mazzola*, No. 15-CV-04962-JSC, 2017 WL 6493091, *9 (N.D. Cal. Dec. 19, 2017)17

Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982) ...................... 11

Ontiveros v. Zamora, 303 F.R.D. 356, 371 (E.D. Cal. Oct. 8, 2014) ...................................... 12

Ott v. Mortg. Inv'rs Corp. of Ohio, Inc., 65 F. Supp. 3d 1046, 1064 (D. Or. 2014) ............. 4, 8

Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1168 (9th Cir. 2013).........................2

Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) ................................. 2, 4, 19

*Romero v. Producers Dairy Food Inc.*, 2007 WL 3492841, *4 (ED Cal Nov. 14, 2007).......16

*Shames v. Hertz Corp.*, No. 07–CV–2174–MMA (WMC), 2012 WL 5392159, *14 (S.D. Cal. Nov. 5, 2012) ........................................................................................................... 20, 22

*Shvager v. ViaSat, Inc.*, No. CV-12-10180-MMM-PJWx, 2014 WL 12585790, *13 (C.D. Cal. Mar. 10, 2014) ........................................................................................................... 17, 20

*Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990) .. 16

*Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 2909429, *7 (N.D. Cal. May 19, 2016) ....................................................................................................................... 19

Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003)..........................................................2

*Vasquez, v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010)............................. 16

Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)................................................4, 5, 6

Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013) .................................... 4

Wilcox Dev. Co. v. First Interstate Bank of Or., N.A., 97 F.R.D. 440, 443 (D. Or. 1983) ........5

*Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)...................... 15

Williams v. Oberon Media, Inc., 468 F. App'x 768, 770 (9th Cir. 2012)................................. 8

Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).......................7

*Wright v. Atech Logistics, Inc*, No. 3:20-CV-00469-SB, 2020 WL 4373449, *4 (D. Or. July 9, 2020) ......................................................................................................................... 11

*Wright v. Linkus Enterprises*, 259 F.R.D. 468, 475 (E.D.Cal.2009)..................................... 10

## Statutes

29 U.S.C. § 203(m) (former) .................................................................................................. 9

29 U.S.C. 216(b) ................................................................................................................... 9

## Rules

Fed.R.Civ.P. 23(a)(3)............................................................................................................. 6

Fed.R.Civ.P. 23(a)(4) ............................................................................................................7

Fed.R.Civ.P. 23(b)(3) ........................................................................................1, 8, 9
Fed.R.Civ.P. 23(e) ................................................................................................ 1

**Treatises**

1 McLaughlin on Class Actions § 4:5 (15th ed.) ......................................................5
Manual for Complex Litigation (Fourth).........................................................22
William B. Rubenstein, 1 Newberg on Class Actions § 3:3 (5th ed.) ........................ 8

**Other Authorities**

Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law
    Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 292–94 (2008) 14
Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law
    Enforcement in the Federal Courts*, 29 Berkeley J. Empl. Lab. Law 269, 294 (2008)..... 21
Ellen C. Kearns, et al., *Employment Litigation: Emerging Trends in Wage & Hour
    Litigation After Dukes v. Wal-Mart*, 9 J.L. Econ. & Pol'y 347, 370–71 (2013) ................ 14

Counsel for the parties have conferred regarding the subject of this motion and have agreed to jointly submit this motion. Defendants are referred to collectively herein as "DANWEI".

## MOTION

The parties to this action jointly move for an Order:

1.     Finally certifying for settlement purposes the Rule 23(b)(3) class of "all current and former DANWEI employees who received a paycheck for work performed in Oregon on or after April 2, 2013 who do not file a timely request to opt-out of the Class";

2.     Finally certifying an FLSA collective of "all current and former DANWEI tipped employees who received a paycheck for work performed in Oregon on or after April 2, 2016 and on or before March 24, 2018 who file a timely opt-in to the Collective"; and

3.   Finally approving the settlement agreement as fair, reasonable, and adequate.

This motion is supported by the Declaration of Jon M. Egan submitted herewith. Also submitted herewith are plaintiff's motion for award of attorney fees, settlement expenses, and service payment.

## I.  Final approval of settlement

Under Rule 23(e) of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Thus, to approve a class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

The settlement must be considered as a whole, and although there are "strict procedural

requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure it is 'fair, adequate, and free from collusion.' " *Lane*, 696 F.3d at 818–19 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). There are a number of factors guiding this review, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id.* at 819. Courts within the Ninth Circuit "put a good deal of stock in the product of an arms-length [*sic*], non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Class action settlements involve "unique due process concerns for absent class members who are bound by the court's judgments." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (quotation marks and citation omitted). When the parties negotiate the settlement agreement before formal class certification, as in this case, the court should engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *Id.* (quotation marks and citation omitted). This more "exacting review" is warranted "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819.

The Ninth Circuit has recognized, however, that "[j]udicial review also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Thus, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is

concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en

banc). (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).

## A. Notice to the Class

The Court originally granted preliminary approval to the parties' proposed notice

procedure. *See* Dkt. 43. Class counsel carried out that procedure. Declaration of Jon M. Egan

at ¶¶ 2–5 and Exhibit A.

Notice of the settlement was given to the settlement class by the best means practicable

under the circumstances, including mailing and emailing the Notice to Class Members.

Each Notice provided Class Members with all required information including, among

other things: (1) a summary of the Action and the claims asserted; (2) a clear definition of the

Settlement Class; (3) a description of the material terms of the settlement; (4) the fact that no

affirmative action was needed to receive the benefit of class membership, but notice that

Class Members could opt out of the Settlement Class, as well as notice of the claim/opt-in

procedure for FLSA/state tip claim participation; (5) an explanation of Class Members' opt-

out and claim/opt-in rights, the date by which Class Members must opt out or submit

claims/opt-ins, and information about how to do so; (6) explaining the release of claims

should Class Members choose to remain in the Settlement Class and/or make a claim/opt-in;

(7) instructions about how to object to the settlement and the deadline for Class Members to

submit any objections; (8) instructions about how to object to the requested attorney's fees,

expenses, and service award and the deadline for Class Members to submit any objections;

(9) the date, time, and location of the final approval hearing; (10) class counsel's contact

information, by which Class Members could obtain more information on the settlement; (11)

contact information for the Court; and (12) information about how Lead Counsel and the

Class Representative would petition the court to be compensated. The notices were therefore

sufficient. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (reaffirming that a

class notice need only "generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard" (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).

## B. Final Certification of Rule 23 class

To certify a settlement class, the requirements of Rule 23 of the Federal Rules of Civil Procedure must be satisfied. *See Hanlon*, 150 F.3d at 1019. Under Rule 23, the plaintiff "must be prepared to prove" that each of the requirements of the Rule is satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23 sets forth more than a "mere pleading standard." *Id.* On the other hand, Rule 23 provides district courts with broader discretion to certify a class than to deny certification. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013).

A party seeking class certification must satisfy each of the requirements of Rule 23(a) and at least one requirement of Rule 23(b). *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). Under Rule 23(a), a district court may certify a class only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In other words, a proposed class must meet the requirements of numerosity, commonality, typicality, and adequacy of representation. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012). Rule 23 also requires, implicitly, that the members of the proposed class be ascertainable based on objective criteria. *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1064 (D. Or. 2014). Along with the five requirements of Rule 23(a), the party seeking to maintain a class action also must "satisfy through evidentiary proof at least one of the provisions of Rule

23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

The Rule 23 analysis is "rigorous" and may "entail some overlap with the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351 (quotation marks omitted); *Comcast Corp.*, 569 U.S. at 33-34. This "rigorous" review applies even when certification is for settlement purposes only. *See, e.g., In re Hyundai*, 926 F.3d at 556. Still, Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* A district court, however, "*must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphasis in original).

The parties agreed to certification of the class for settlement purposes, and the Court previously agreed that the class met the requisite factors in conditionally certifying the class for settlement purposes in the preliminary approval of the settlement. The Court, however, must now conduct a "rigorous" analysis of the factors.

## 1. Rule 23(a)

The requirements of FRCP 23(a) are met.

## a) Numerosity

In this district, there is a "rough rule of thumb" that 40 class members is sufficient to meet the numerosity requirement. *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013); *see also Wilcox Dev. Co. v. First Interstate Bank of Or., N.A.*, 97 F.R.D. 440, 443 (D. Or. 1983) (same); 1 *McLaughlin on Class Actions* § 4:5 (15th ed.) ("The rule of thumb adopted by most courts is that proposed classes in excess of 40 generally satisfy the numerosity requirement."). Class counsel sent Notice packets to 100 potential Class Members, as identified through defendants' employment records. This shows that the

numerosity requirement is met.

## b) Commonality

To satisfy the commonality requirement, plaintiffs must show that the class members suffered the "same injury"—that their claims depend upon a "common contention." *Wal-Mart*, 564 U.S. at 350 (quotation marks omitted). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Class members, however, need not have *every* issue in common: commonality requires only "a single significant question of law or fact" in common. *Mazza*, 666 F.3d at 589; *see also Wal-Mart*, 564 U.S. at 359. The Class Members have the significant issues of law and fact in common, including:

1. What defendants' tax deduction policies and procedures were;
2. What defendants' tip pooling policies and procedures were;
3. Whether the Class/Collective Members' wrongful deduction claims are viable given the parties' competing interpretations of certain statutes and regulations;
4. Whether and to what extent the Class/Collective members' tip-theft claims are viable, whether alone or in conjunction, and the interpretation of the applicable statutes, regulations, and common law;
5. How the various statutes of limitations at issue in this case interact, particularly given the presence of federal FLSA claims;
6. The nature and extent of individual defendant Dave Singh's liability for the alleged claims;
7. Whether defendants' actions were willful; and
8. Whether defendants have other defenses to the application of wage and hour laws.

Thus, the commonality requirement is satisfied.

## c) Typicality

To meet the typicality requirement, plaintiffs must show that the named parties' claims or defenses are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Under the "permissive standards" of Rule 23(a)(3), the "representative's claims are 'typical' if they are

reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). To determine whether claims and defenses are typical, courts look to "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quotation marks omitted); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The lead plaintiff's claims are based on the same conduct as the claims of the Settlement Class, and all Class Members have the same or similar injury. Thus, lead plaintiff presents claims that are typical of the claims held by each Class Member.

### d) Adequacy

Rule 23(a)(4) states that before a class can be certified, a court must find that "the representative parties will fairly and adequately protect the interests of the class." This requirement turns on two questions: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members"; and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. The adequacy requirement is based on principles of constitutional due process; accordingly, a court cannot bind absent class members if class representation is inadequate. *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940); *Hanlon*, 150 F.3d at 1020.

Lead plaintiff has shown that he understands and accepts his responsibility as a Class Representative. Lead plaintiff has not demonstrated interests that are adverse to the Class Members. There is no conflict of interest in this action, and there is no disagreement between plaintiff's interests and those of the Class Members. Additionally, Class Counsel and lead plaintiff have vigorously prosecuted this action for almost two and a half years.

### e) Ascertainability

Ascertainability, although "not expressly required" by Rule 23, is a threshold requirement for class certification. *Ott*, 65 F. Supp. 3d at 1064. A proposed class must be "precise, objective, [and] presently ascertainable." *See Williams v. Oberon Media, Inc.*, 468 F. App'x 768, 770 (9th Cir. 2012) (alteration added) (quotation marks omitted). Class members must be identifiable through "a manageable process that does not require much, if any, individual factual inquiry." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 237 (N.D. Cal. 2014) (quoting William B. Rubenstein, 1 *Newberg on Class Actions* § 3:3 (5th ed.)). This requirement does not entail, however, that "*every* potential member … be identified at the commencement of the action." *Id.* (quotation marks omitted) (emphasis added). The Class Members here were identifiable from defendants' employment records, and thus this requirement is met.

### 2. Rule 23(b)(3)

Rule 23(b)(3) requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This analysis, in accord with Rule 23's "principal purpose" of "promot[ing] efficiency and economy of litigation," inquires into "the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 963–64 (9th Cir. 2013) (quotation marks omitted). The focus of this inquiry, however, is on "*questions* common to the class"—plaintiff need not, at this threshold, "prove that the predominating question[s] will be answered in their favor." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459, 468 (2013) (emphasis in original).

The only individualized issues in this case were those of damages, which do not defeat certification. The common issues predominate here.

**Joint motion for final class/collective settlement approval**          Page 8

Regarding superiority, the purpose of Rule 23(b)(3) is "to allow integration of numerous small individual claims into a single powerful unit." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 722 (9th Cir. 2010). Here, class counsel sent out 100 Notice packets, showing that there are many class members who have low-value claims. Although they may be entitled to attorney's fees and costs if they prevail in an individual lawsuit, the individual claims likely are too small to justify the cost and effort of private counsel to file and prosecute individual actions. Allowing this action to proceed as a class action is the superior method of adjudicating the controversy given the number of class members and amount of damages at issue for each class member. *In re Hot Topic, Inc. Sec. Litig*., 2014 WL 12462472, at *6 (C.D. Cal. Nov. 3, 2014).

## C. Final FLSA Collective Certification

The parties jointly move to finally approve the FLSA settlement collective, *i.e.*, "all current and former DANWEI tipped employees who received a paycheck for work performed in Oregon on or after April 2, 2016 and on or before March 24, 2018 who file a timely opt-in to the Collective."

The FLSA requires employers to pay the federal minimum wage for all hours worked; for tipped workers prior to March 24, 2018, tips that the worker was required to contribute to an invalid tip pool violate the FLSA if they exceed the amount by which the worker's wages exceed the federal minimum wage. *See* former 29 U.S.C. § 203(m). After that date, the FLSA was amended to allow mandatory tip sharing with all employees (but still not with employers, managers, supervisors); this is why the FLSA collective ends on that date. The FLSA provides that an aggrieved employee may bring a collective action on behalf of himself and other employees "similarly situated" based on an employer's failure to adequately pay overtime wages. 29 U.S.C. 216(b). The FLSA limits participation in a collective action to only those parties that "opt-in" to the suit. *See Id.* ("No employee shall be a party plaintiff to any such

action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought"); *see also Wright v. Linkus Enterprises*, 259 F.R.D. 468, 475 (E.D.Cal.2009). To maintain a collective action under the FLSA, a plaintiff must demonstrate that the putative collective action members are similarly situated. *Id.; Adams v. Inter–Con Sec. Sys.*, 242 F.R.D. 530, 535–36 (N.D.Cal.2007); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D.Cal.2004).

Plaintiff has made "substantial allegations that the putative class members were subject to a single illegal policy, plan or decision." *Leuthold*, 224 F.R.D. at 468. Specifically, plaintiff alleges that defendants uniformly required tipped employees to contribute tips to a tip pool that was distributed to the back of the house. Plaintiff's collective action under the FLSA is therefore appropriate for final certification.

### D. Settlement Agreement

The Court considers the factors enumerated by the Ninth Circuit as relevant in evaluating whether a settlement agreement is fair, reasonable, and adequate.

### 1. Strength of Plaintiff's case and the risk, expense, complexity, and likely duration of further litigation and maintaining class action status through trial

Several aspects of plaintiff's claims and defendants' defenses remain open questions of fact or law. Although plaintiff is confident of the strength of his case, he acknowledges that there are non-frivolous potential defenses to his claims.

The central consideration for this factor is usually the expense of litigation. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.*

The parties agree that if this case had not settled, they would have had to engage in significant additional discovery and to file motions for conditional certification of the FLSA

Class, certification of the Rule 23 Class, likely cross-motions on summary judgment, and defendants' presumptive motions to decertify the FLSA and Rule 23 classes. These litigation steps would have been expensive, complex, and protracted. The settlement avoids these expenditures of resources for all parties and the Court and provides Settlement Class Members with "certain and prompt relief," a "significant benefit that [they] would not receive if the case proceeded." *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013). That is all the more true in today's uncertain climate related to COVID-19 and its ongoing effects on the economy. This factor weighs in favor of approval.

## 2. The amount offered in settlement

In considering the potential fairness of the recovery, courts often compare the total amount of recovery in a settlement to the estimated total amount of damages that the plaintiffs could recover if the case was litigated. *See, e.g., In re Mego Fin. Corp.*, 213 F.3d 454, 459 (9th Cir. 2000). Nonetheless, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982).

The parties have agreed to a gross settlement figure of $75,000, consisting of $3,750 for the unlawful deduction claims and $71,250 for the tip theft claims. Those figures respectively represents 3% of the potential unlawful deduction damages available to the class, and 82% of the potential tip theft damages available to the collective, according to the facts alleged and plaintiff's counsel's calculations. The substantial discounting of the unlawful deduction damages results from the likelihood of success of that claim, given Judge Beckerman's recent decision holding such claims to be precluded. *See, Wright v. Atech Logistics, Inc*, No. 3:20-CV-00469-SB, 2020 WL 4373449, *4 (D. Or. July 9, 2020), *report and recommendation adopted sub nom. Wright v. Atech Logistics, Inc.*, No. 3:20-CV-00469-SB, 2020 WL

4369445 (D. Or. July 30, 2020).

This fund will pay the costs of recovery to Class Members, attorney's fees and costs, any awarded service payment, and the costs to administer the Settlement, including giving notice to Class Members, printing and distributing checks, and printing and distributing 1099s following the tax year of the payments.

To date, no objections have been raised challenging the sufficiency of the amount offered in settlement. The amount of recovery is fair, adequate, and reasonable.

## 3.  The extent of discovery completed and the stage of the proceedings

This factor is concerned with whether "the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp.*, 213 F.3d 454, 459 (9th Cir. 2000). Including its prelitigation demand-letter phase, this case was litigated for nearly three years. The parties engaged in significant discovery, including both formal and informal written discovery, including time and pay and tip records for over 100 employees, as well as large amounts of spreadsheet information and multiple rounds of explaining and refining calculations to reach the appropriate damage figures. The parties "carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. Oct. 8, 2014). This factor, therefore, supports approval.

## 4.  The experience and views of counsel

" 'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). "This is because 'parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.' " *Id.* (alteration omitted) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). Absent fraud or collusion, courts

can, "and should, rely upon the judgment of experienced counsel for the parties," when assessing a settlement's fairness and reasonableness. *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013). Lead counsel is an experienced litigator. Defendants are also represented by experienced counsel.

There are substantial concerns regarding the viability of the unlawful deduction claims in this case, given another Magistrate's published opinion (discussed above) ruling that they are not viable. There are also concerns regarding the viability of the common-law tip-pool claims, which, while not unprecedented, are also somewhat novel. Similarly, defendants have concerns about potentially establishing a precedent for future application to their business, and the accrual of attorney fees disproportionate to the amount in controversy. Other factors taken into account in negotiating the settlement amount include uncertain treatment of prejudgment payments; the availability or nonavailability of single or multiple penalties under Oregon law; the relatively small amounts of the actual underlying violations (with potential juror hesitancy to award large punitive awards thereon); the potential for any class certification not to survive through trial; and the non-insured nature of this action and potential to collect on a full-value judgment given this one-restaurant-location company's cash-flow issues related to the Covid-19 pandemic.

This factor supports approval.

## 5. Presence of a Government Participant

This case does not qualify for CAFA notice. This factor is therefore neutral.

## 6. Reaction of the Settlement Class

Of the 100 class members to whom notice packets were mailed and emailed, none opted out, and to date, no one has objected to the settlement. 27 front-of-the-house class members submitted complete claims, which is 47.4% of the eligible class pool. That is above the typical opt-in rates in similar FLSA or FLSA/state-claim hybrid cases. *See, e.g.*, Andrew C.

**Joint motion for final class/collective settlement approval**          Page 13

Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 BERKELEY J. EMP. & LAB. L. 269, 292–94 (2008) (noting a nationwide opt-in average of 15.71%); Ellen C. Kearns, et al., *Employment Litigation: Emerging Trends in Wage & Hour Litigation After Dukes v. Wal-Mart*, 9 J.L. ECON. & POL'Y 347, 370–71 (2013) ("[F]rankly, employees are terrified of opting in. The opt-in rates in FLSA actions are varied but they range from below 10% (in the worst cases) to 15 to 20% (in the typical case) because people are worried that if they step forward, they'll be fired.")

The participation rate and payout percentage, along with the lack of any objections to the settlement, provides a strong presumption that the settlement is fair, reasonable, and adequate. *See, e.g., Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The absence of a single objection to the proposed Settlement provides further support for final approval of the Proposed Settlement."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("By any standard, the lack of objection of the Class Members favors approval of the Settlement."). Thus, this factor weighs in favor of approval.

### 7.  The absence of collusion or other conflicts of interest

Courts considering a class settlement must examine whether the settlement was the "result of good faith, arm's-length negotiations or the result of fraud and collusion." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 258 (N.D. Cal. 2015). The Ninth Circuit has identified three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; or (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund. *In re Bluetooth Headset Prods. Liab. Litig.*, 654

F.3d 935, 947 (9th Cir. 2011). *See also*, *Briseño v. Henderson*, No. 19-56297, 2021 WL 2197968, *6 (9th Cir. June 1, 2021) (extending *Bluetooth* holding to post–class certification settlements). The Settlement is the product of arm's-length negotiations, with assistance from Magistrate Judge Stacie Beckerman, as well as additional negotiations afterward. Defendants have continued to dispute the claims against them, and the Action was litigated for over two years before the parties reached their proposed Settlement.

### a) There is no disproportionate distribution to plaintiff's counsel

To analyze a settlement for disproportionate distribution, consistent with *In re Bluetooth,* the Court compares the payout to the class (both actual and expected) to the unopposed claim of fees by class counsel. S*ee, e.g., Harris v. Vector Mktg. Corp.,* 2011 WL 4831157, *6 (N.D.Cal. Oct. 12, 2011).

### (1) Fees were proportionate compared to expected payout

Plaintiff's counsel's expected fees in this case are reasonable.

Common-fund attorney fees are awarded as a percentage of the total benefit to the class, not just the amounts actually claimed by the class members. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) ("To claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel."); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar. We thus reverse and remand," citing *Boeing*.). "The Supreme Court has indicated that the parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees." *Id.*, citing *Evans v. Jeff D.,* 475 U.S. 717, 734–35, 738 n. 30, 106

S.Ct. 1531, 89 L.Ed.2d 747 (1986).

Plaintiff's counsel seeks 33% of the gross settlement fund as an award of attorney fees, costs, and nontaxable expenses (other than $2,000 allocated for settlement administration, which is sought separately). That is above the benchmark award in the Ninth Circuit. *Id.* ("[T]he attorneys for a successful class may recover a fee based on the entire common fund created for the class, even if some class members make no claims against the fund so that money remains in it that otherwise would be returned to the defendants. In *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990), we held likewise, and indicated that our benchmark for an attorneys' fee award in a successful class action is twenty-five percent of the entire common fund.").

However, it is in keeping with the typical amounts awarded in this circuit in similar small class actions. For example, "Several courts in the Ninth Circuit have held in wage and hour class actions that a 30% or higher award is appropriate." *Bell v. Consumer Cellular, Inc.*, No. 3:15-CV-941-SI, 2017 WL 2672073, *12 (D. Or. June 21, 2017), citing *Miller v. CEVA Logistics USA, Inc.*, No. 2:13-CV-01321-TLN, 2015 WL 4730176, *8 (ED Cal. Aug 10, 2015) (noting that courts in the Ninth Circuit "usually award attorneys' fees in the range of 30-40% in wage and hour class actions" where the common fund is under $10 million). Courts have commonly approved awards of approximately 33% in such cases. *Id.*, citing *Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 8526982, *9 (ND Cal Dec 11, 2015); *Lusby v. GameStop Inc.*, 2015 WL 1501095, *4 (ND Cal Mar 31, 2015); *Burden v. SeleciQuote Ins. Servs.*, 2013 WL 3988771, *5 (ND Cal Aug 2, 2013); *Barbosa v. Cargill Meat Sols. Corp.*, 297 FRD 431, 450 (ED Cal 2013); *Franco v. Ruiz Food Prod., Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, *18 (ED Cal Nov 27, 2012); *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575 (ED Cal Oct 31, 2012); *Vasquez, v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010); *Romero v. Producers Dairy Food Inc.*, 2007 WL 3492841, *4 (ED Cal Nov. 14, 2007).

**Joint motion for final class/collective settlement approval**                    Page 16

The fact that there is no reversion in this case, and that plaintiff's counsel is absorbing the non-notice costs and litigation expenses of the case, further support the award of one third of the gross settlement amount as fees.

Thus, the expected fees negotiated as part of the settlement agreement were reasonable.

**(2) Fees are also proportionate compared to actual payout**

In addition to the expected fees, the actual fees to be distributed to plaintiff's counsel are not disproportionate to the distribution to the class members. Courts analyze this factor by imagining a purported constructive common fund, adding up all of the money that the defendant will actually be paying and comparing it to the requested fee. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 945 (9th Cir. 2011) (identifying purported constructive common fund as $962,000, adding the "$800,000 allotment for attorneys' fees, the $12,000 allotment for an incentive award, the $100,000 *cy pres* award, and the $50,000 allotment for fees" to reach this figure).

In our case, the purported constructive common fund totals $75,000.00, as all of the gross settlement funds will be distributed and there is no reversion.

These figures are within the range approved by other district courts in this Circuit as non-collusive. *Compare, e.g., Norris v. Mazzola*, No. 15-CV-04962-JSC, 2017 WL 6493091, *9 (N.D. Cal. Dec. 19, 2017) (fee request of $858,751, which was 80% of the class payout of $1,076,255, "does not suggest collusion"); *Shvager v. ViaSat, Inc.*, No. CV-12-10180-MMM-PJWx, 2014 WL 12585790, *13 (C.D. Cal. Mar. 10, 2014) (when requested fees of $150,000 was 70% of $215,000 class award, "the first sign of collusion is not present here"); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 984 (E.D. Cal. 2012) ("The court estimates that the settlement pool, particularly with the reduction in the fee award to class counsel, will exceed the fee award of $1,160,000. These small disparities are in sharp contrast to those in recent cases like *Bluetooth*"); and *Harris v. Vector Mktg. Corp.*, No. C-08-5198-EMC, 2012

WL 381202, *5 (N.D. Cal. Feb. 6, 2012) ("fees are now on par with the money to the class and the cy pres combined (roughly 1:1). The Court is not faced with a situation where fees are disproportionate to the class award as in *Bluetooth*."), with *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (noting that "award of attorneys' fees up to eight times the monetary *cy pres* relief afforded the class" was disproportionate, especially given zero monetary relief directly to the class) and *Harris v. Vector Marketing Corp.,* No. C–08–5198, 2011 WL 4831157 (N.D.Cal. Oct. 12, 2011) (disapproving an agreement that awarded class counsel $4 million, while the expected payout to the class was approximately $1 million.).

In addition to the ratio itself, courts have found other facts to support a finding of no collusion with regard to the proportionate distribution element. These include the fact that the requested fee award includes reimbursable out-of-pocket costs (*Keegan v. Am. Honda Motor Co, Inc.*, No. CV-10-09508-MMM-AJWx, 2014 WL 12551213, *18 (C.D. Cal. Jan. 21, 2014)). As noted previously, plaintiff's counsel is not seeking a separate award of costs or expenses in this case other than specifically associated with the notice and settlement administration.

For the above reasons, we submit that both the actual and expected distributions to the class and to plaintiff's counsel are proportionate and do not suggest collusion.

**b) The agreement does contain a clear sailing provision, but no kicker**

The settlement agreement does contain a "clear sailing" provision, in that defendants agreed not to contest plaintiff's counsel's attorney fee petition for up to 33% of the gross settlement value. "As the Ninth Circuit has explained, however, a clear sailing provision does not signal the possibility of collusion where, as here, Class Counsel's fee will be awarded by the Court from the same common fund as the recovery to the class." *In re High-Tech Employee Antitrust Litigation*, 11-cv-02509-LHK, 2015 WL 5158730, *14 (N.D. Cal. Sep. 2,

2015) (internal quotations omitted) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009)); *see also Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, *7 (N.D. Cal. Apr. 15, 2015) ("because any attorneys' fees award will come out of the common fund, there is no 'clear sailing' agreement here that would warrant against settlement approval"). This factor therefore does not weigh against settlement approval. *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 2909429, *7 (N.D. Cal. May 19, 2016) (so stating).

In the current settlement, any un-awarded fees/costs/incentive payment will be disbursed to the class members. This removes the "kicker" provision that would otherwise have returned any un-awarded fees to defendants. "As the Ninth Circuit has noted, moreover, the inference of collusion drawable from a clear sailing provision is reduced when the agreement lacks a reversionary or 'kicker provision'." *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014), citing *In re Bluetooth*, 654 F.3d at 949.

### c) There is no reversion, either of settlement funds or attorney fees

*In re Bluetooth* did not flag settlement reversions in general as a warning sign of potential collusion. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011). Rather, it identified the reversion of clear-sailing attorney fees to the defendant as the warning sign. *Id.* To be sure, whether or not unclaimed settlement funds revert to the defendant is a consideration in determining the overall fairness of a settlement. But that was the case before *In re Bluetooth*. As a warning sign of potential collusion, the inquiry focuses on the reversion of unawarded attorney fees.

And although some courts have noted difficulties associated with a "kicker" provision, such provisions cut both ways. When attorney fees are paid independently from (*i.e.*, without deduction from and without reversion to) the class's recovery, one could picture a plaintiff's

counsel becoming disincentivized to maximize that class recovery. However, other courts
have viewed that as a positive, *supporting* settlement approval, because each class member
will receive their full recovery regardless of the amount of attorney fees awarded. *See, e.g*.,
*Shvager v. ViaSat, Inc*., No. CV-12-10180-MMM-PJWx, 2014 WL 12585790, *14 (C.D. Cal.
Mar. 10, 2014) ("This is not, moreover, a case in which ViaSat has agreed to pay a lump sum
that will be apportioned among class members and their attorneys. Rather, the settlement
agreement provides that each class member will receive his or her *pro rata* share—
approximately $141.99 per person.... The $150,000 negotiated cap on attorneys' fees is
separate, and is not deducted from the class recovery. The fact that the settlement does not
contemplate a common fund from which both class members and counsel will be paid
mitigates, to some extent, the collusive nature of the inherent kicker provision."); *Shames v.
Hertz Corp*., No. 07–CV–2174–MMA (WMC), 2012 WL 5392159, *14 (S.D. Cal. Nov. 5, 2012)
("[T]he attorneys' fees ... are wholly separate from the class settlement—and will have no
impact one way or the other on the amount the class recovers—a 'savings' for Defendants
[should the court not grant the full amount of negotiated attorneys' fees] does not implicate
the concerns the Ninth Circuit expressed about the 'kicker' provision in the *Bluetooth*
settlement").

    In any event, there is neither a settlement fund reversion nor an attorney fee reversion in
our case. All funds not awarded to counsel or the named plaintiff will be distributed to the
class and collective members. This removes the third *In re Bluetooth* factor from the case.

## 8. Application

    We have discussed the application of the *In re Bluetooth factors* above. "For all these
factors, considerations, subtle signs, and red flags, however, the underlying question remains
this: Is the settlement fair? The factors and warning signs identified in *Hanlon*, *Staton*, *In re
Bluetooth*, and other cases are useful, but in the end are just guideposts. The relative degree

of importance to be attached to any particular factor will depend upon the unique facts and circumstances presented by each individual case. Deciding whether a settlement is fair is ultimately an amalgam of delicate balancing, gross approximations and rough justice, best left to the district judge, who has or can develop a firsthand grasp of the claims, the class, the evidence, and the course of the proceedings—the whole gestalt of the case. Accordingly, the decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig*., 895 F.3d 597, 611 (9th Cir. 2018) (internal citations and quotations omitted). *See also*, *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 448 (C.D. Cal. 2014) ("It must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation," citations omitted).

It is also worth noting that even in *In re Bluetooth*, the seminal case establishing the factors of the collusion analysis, the trial court affirmed the settlement on remand despite the presence of all three "red flags" identified on appeal.

With that background, we discuss below several factors that weigh against a finding of collusion.

**a)  The notice process was fair and fairly implemented**

One of the concerns that courts have expressed when dealing with a reversion is that it incentivizes the defendant to negotiate for a more difficult claims process. Here, we have no reversion, and the result of the claims process does not support a finding of collusion. In our case, 47.4% of the eligible class members filed a claim. That compares favorably with average opt-in rates in similar wage-and-hour class actions. *See, e.g*., Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 BERKELEY J. EMPL. LAB. LAW 269, 294 (2008) ("The average opt-in rate for the twenty-one

cases analyzed in the Table is 15.71%.").

Notice was distributed by both email and by first-class mail, which has been described as the "gold standard" for class notice. *See, e.g.*, *Good v. Am. Water Works Co., Inc.*, No. CV-2:14-01374, 2016 WL 5746347, *7 (S.D.W. Va. Sept. 30, 2016) (so stating). *See also*, MANUAL FOR COMPLEX LITIGATION (FOURTH) at 287 ("When the names and addresses of most class members are known, notice by mail usually is preferred."). We also re-mailed any returned notices to the most recent addresses obtainable on the national address database OpenOnline, and achieved a 90% delivered rate (with only 10 of the 100 notice packets not deliverable by mail). Egan Dec. at ¶ 2. Of those, however, all of them had email addresses, and none of the emails were returned as undeliverable. *Id.* at ¶ 3. Thus, an aggregate 100% deliverable rate was achieved. *Id.*

### b)  The case was fought before it was settled

The fact that the parties litigated the case, including opposed discovery motions, before engaging in mediation militates against a finding of collusion. *See, e.g.*, *Shames v. Hertz Corp.*, No. 07-CV-2174-MMA-WMC, 2012 WL 5392159, *15 (S.D. Cal. Nov. 5, 2012) ("The protracted and hard-fought nature of this case further militates against the existence of collusion. … [H]ad the parties sought to collude, they would have been much more likely to reach a collusive settlement as quickly and cheaply as possible to minimize their costs and attorney time while maximizing their personal recovery."); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 259 (N.D. Cal. 2015) ("Moreover, the Court finds no evidence of explicit collusion here, where, after litigating several rounds of motions to dismiss, the parties engaged in settlement talks overseen by a neutral mediator for several weeks before agreeing on this settlement.").

### c)  Participation of mediator and course of negotiations

The parties in this case held a judicial settlement conference with Judge Beckerman. The

participation of a mediator, though not dispositive, is "a factor weighing in favor of a finding of non-collusiveness." *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 948 (9th Cir.2011); *see also*, *Carter v. Anderson Merchandisers, LP*, 2010 WL 1946784, *7 (C.D. Cal. 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive," citations omitted).

Additional documents were exchanged following the mediation in order to finalize the calculations and disseminate notice.

### d) The class achieved an excellent result

As discussed above, this case involves a somewhat technical violations of the law—small wrongful deductions and tips that were distributed to non-front-of-the-house employees but were not retained by management. As a result of this settlement, all class members (whether or not they opted in) will more than be repaid those deducted amounts, *plus* additional compensatory statutory damages.

In addition to receiving their economic damages, the front-of-the-house class members were given the option to opt in to the class in order to obtain a partial repayment of unpaid tips from defendants, limited only by the parties' good-faith determination of these uninsured one-location-restaurant defendants' ability to pay.

### II. Conclusion

For the above reasons, the parties jointly move for an Order:

1.      Finally certifying for settlement purposes the Rule 23(b)(3) class of "all current and former DANWEI employees who received a paycheck for work performed in Oregon on or after April 2, 2013 who do not file a timely request to opt-out of the Class";

2.      Finally certifying an FLSA collective of "all current and former DANWEI tipped employees who received a paycheck for work performed in Oregon on or after April 2,

2016 and on or before March 24, 2018 who file a timely opt-in to the Collective"; and

3.    Finally approving the settlement agreement as fair, reasonable, and adequate.

Respectfully Submitted by:

                                JON M. EGAN, PC

                                *s/ Jon M. Egan*

DATED:  September 13, 2021

                                By_____
                                Jon M. Egan, OSB No. 002467
                                jegan@eganlegalteam.com
                                Attorney for Plaintiff